IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:24-cv-00233-MR

| | |
|---|---|
| JAQUAN M. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| AREN MESSER, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendants Aren Messer, Tye Galloway, and Daniel Cox's Motion for Summary Judgment. [Doc. 29].

**I. BACKGROUND**

The incarcerated Plaintiff Jaquan M. Davis, proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Henderson County Detention Center ("HCDC") where he is a pretrial detainee. The Plaintiff's unverified Complaint passed initial review on claims that Defendants Messer, an HCDC corporal, and Defendants Galloway and Cox, HCDC detention officers, used excessive force and were deliberately indifferent to the Plaintiff's serious medical need.[1] [See Doc. 1:

---

[1] The Plaintiff's Complaint is unverified and therefore cannot be considered on summary judgment as a forecast of evidence.

Compl.; Doc. 7: Order on Initial Review]. The Plaintiff seeks compensatory and punitive damages. [Doc. 1: Compl. at 4].

The Defendants filed the instant Motion for Summary Judgment, supported by the Defendants' declarations and excerpts of the Plaintiff's deposition.[2] [Doc. 29: MSJ]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 32: Roseboro Order]. The Plaintiff filed an unverified Response [Doc. 34: Resp.], and the Defendants filed a Reply [Doc. 35: Reply]. This matter is therefore ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[2] While video footage of the incident in question apparently exists, it has not been filed with the Court. [See, e.g., Doc. 30-3: Deop. at 30 (referring to the video)].

(1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the

3

Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The forecast of evidence, viewed in the light most favorable to the Plaintiff as the non-moving party, shows the following.

On July 13, 2024, a few days after the Plaintiff entered the HCDC, he began requesting time outside of his cell. [Doc. 30-5: Galloway Decl. at ¶ 4; see Doc. 30-3: Depo. at 2-5]. The Plaintiff kicked his cell door several times, starting at around 5:00 p.m.,[3] because he wanted to shower and use the phone. [Id. at ¶¶ 6-8, 10; id. at 6-7, 26]. The Plaintiff was instructed repeatedly to stop kicking the door and he was cautioned that, if he continued, his shoes would be confiscated.[4] [Id. at ¶¶ 7-11].

Officers Galloway and Cox responded to the Plaintiff's cell and ordered him, repeatedly, to hand over his shoes. [Id. at ¶¶ 12-13; Doc. 30-4: Cox Decl. at ¶¶ 5-6; Doc. 30-3: Depo. at 16-17]. The Plaintiff refused, saying that he did not want to walk barefoot. [Doc. 30-3: Depo. at 17, 30]. Cox and Galloway entered the Plaintiff's cell and repeated the order to hand over his shoes, and the Plaintiff continued to refuse. [Id.; Doc. 30-5: Galloway Decl.

---

[3] The Court relies on the Defendants' forecast of evidence regarding timing, because the Plaintiff's deposition testimony is inconsistent in this regard. [Doc. 30-3: Depo. at 6-7, 14].

[4] The Court need not accept the Plaintiff's contradictory statements in this regard. [See Doc. 30-3: Depo. at 7 (denying that anyone told him not to kick the door); id. at 11 ("I'm pretty sure somebody said, 'Stop kicking the door.'"); id. at 14 ("They said, 'Stop kicking the door,' once")]; see Scott, 550 U.S. at 380.

at ¶ 14; Doc. 30-4: Cox Decl. at ¶ 8]. The Plaintiff felt that he was "in the right," so he was not going to listen to the officers and he would not have left his cell even if they had allowed him to keep his shoes. [Doc. 30-3: Depo. at 25-26].

Galloway grabbed the Plaintiff and threw him to the floor. [Id. at 18]. Galloway unsuccessfully tried to gain control of the Plaintiff's arms, as the Plaintiff was on his back, pulling away, and tucking his arms under his body. [Doc. 30-5: Galloway Decl. at ¶¶ 15-16; Doc. 30-6: Messer Decl. at ¶ 5]. Cox punched the left side of the Plaintiff's face once and the Plaintiff was told to put his hands behind his back. [Doc. 30-3: Depo. at 8, 18-19]. Corporal Messer arrived while the Plaintiff was on the floor, refusing to roll to his stomach. [Doc. 30-5: Galloway Decl. at ¶ 18; Doc. 30-6: Messer Decl. at ¶¶ 3, 5]. Messer "push[ed] [Plaintiff's] head into the concrete"[5] and said "stop resisting," while the Plaintiff "clearly [was] not moving on the ground." [Id. at 8, 18-20].

Messer, Galloway, and Cox rolled the Plaintiff over and escorted him to another part of the HCDC where he was secured in a restraint chair. [Id.

---

[5] The Court need not accept Plaintiff's inconsistent statements with regards to Messer's actions. [See, e.g., Doc. 30-3: Depo. at 8, 20 ("[Messer] just slammed my head inside of the floor;" "[Messer] just throws my head to the side of the concrete;" "[Messer] pushes my head into the concrete;" "[Messer] just throws my head violently into the ground")]; see Scott, 550 U.S. at 380.

at ¶ 6; Doc. 30-4: Cox Decl. at ¶ 10; Doc. 30-5: Galloway Decl. at ¶ 19]. None of the Defendants insulted the Plaintiff, kicked him, or used other force. [Doc. 30-3: Depo. at 20-21].

Once the Plaintiff was secured in the restraint chair, a nurse checked the Plaintiff and reported no signs of physical injury.[6] [Doc. 30-6: Messer Decl. at ¶ 7; Doc. 30-4: Cox Decl. at ¶ 12; Doc. 30-5: Galloway Decl. at ¶ 20]. The Plaintiff sustained a "[w]rist injury" that lasted for a day and "[j]ust head injuries," i.e., a swollen forehead, headaches for couple of days, a "busted lip," and a bloody nose that subsided when he showered. [Doc. 30-3: Depo. at 10, 26-29]. The Plaintiff did not seek medical attention for these injuries. [Id. at 10].

The Plaintiff was placed in lockdown for disrupting jail activities with regards to this incident. [Doc. 30-4: Cox Decl. at ¶ 12; Doc. 30-5: Galloway Decl. at ¶ 21; Doc. 30-3: Depo. at 29].

---

[6] The Court need not accept the Plaintiff's conflicting statements about whether a nurse saw him while he was in the restraint chair. [See Doc. 30-3: Depo. at 8 (denying that a nurse looked at him while he was in the restraint chair); id. at 9 (admitting that a nurse checked his restraints)]; see Scott, 550 U.S. at 380.

7

Case 1:24-cv-00233-MR   Document 37   Filed 11/24/25   Page 7 of 14

## IV. DISCUSSION

### A. Excessive Force

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396). Considerations that bear on the reasonableness or unreasonableness of the force include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Id.

Here, the Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact as to the Defendants' use of excessive force. First,

the forecast shows that there was a legitimate need for the application of force. The Plaintiff repeatedly refused direct orders to stop kicking his cell door and to surrender his shoes. It was objectively reasonable for Defendant Galloway to take the Plaintiff to the floor to preserve order and to compel the Plaintiff's compliance. See Scarbro v. New Hanover Cnty., 374 F.App'x 366, 370 (4th Cir. 2010) (the court "must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough'") (quoting Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999), *abrogated on other grounds by* Short v. Hartman, 87 F.4th 593 (4th Cir. 2023)).

It was also objectively reasonable for Cox to apply one strike to the Plaintiff's face as he struggled against being restrained, and for Messer to press the Plaintiff's head to the floor while attempting to safely secure the Plaintiff. See, e.g., Hernandez v. Reynolds, No. 1:23CV755, 2025 WL 1744291, at *4 (M.D.N.C. June 24, 2025) (granting summary judgment for defendants who applied two closed fist strikes to Plaintiff's head and took Plaintiff to the ground to restrain him was "simply that necessary to [restore order and] maintain control ... [and] [a]ny use of force immediately ended" once Defendants placed Plaintiff into restraints).

9

The relationship between the need and the amount of force that was used also weighs in favor of the Defendants. The forecast of evidence demonstrates that the Plaintiff refused several direct orders and that he had no intention of complying with officers' verbal demands. [See Doc. 30-3: Depo. at 24-25]. The Plaintiff's ongoing defiance left officers with no option other than to use physical means to compel his compliance. See Grayson, 195 F.3d at 696-97); see, e.g., Dale v. FNU Barnes, 1:23CV373, 2024 WL 4416440 (M.D.N.C. Oct. 4, 2024) (it was appropriate for an officer to use a baton to place the plaintiff in an arm lock after initial attempts to control the plaintiff with his hands failed).

The forecast of evidence further demonstrates that the Defendants attempted to temper their use of force. Physical force was only used after repeated verbal orders failed. [See Doc. 30-3: at 24-25]. Each Defendant used force that was minimally required to restore order and they ceased using force as soon as the Plaintiff was safely secured in a restraint chair. The forecast of evidence further demonstrates that the Plaintiff sustained *de minimis* injuries which required no medical treatment and dissipated within a matter of days. The evidence, therefore, demonstrates that the Defendants used force only as necessary to gain control of the defiant Plaintiff and to restore order.

No reasonable jury could conclude, under these circumstances, that the Defendants violated the Plaintiff's constitutional rights by using minimal force to extract the Plaintiff from his cell and to secure him in a restraint chair. See Kingsley, 576 U.S. at 396-96. The Defendants' Motion for Summary Judgment will, therefore, be granted on the Plaintiff's excessive force claims.

### B. Deliberate Indifference to a Serious Medical Need

A pretrial detainee's claim based on deliberate indifference to a serious medical need is properly brought pursuant to the Fourteenth Amendment. Short, 87 F.4th at 611. To prevail on such a claim, a plaintiff must demonstrate that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Id. at 611. Under this standard, "the plaintiff [need not] show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." Id. "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is

11

Case 1:24-cv-00233-MR    Document 37    Filed 11/24/25    Page 11 of 14

either known or so obvious that it should be known.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). It remains, however, insufficient "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." Id. at 611-12.

Here, the forecast of evidence demonstrates that there was a brief use of force in which Plaintiff was extracted from his cell and restrained; that a nurse examined Plaintiff shortly after the incident reported no injuries; that the Plaintiff did not seek any medical attention; and that the injuries all subsided within a few days. The Plaintiff has failed to forecast any evidence that he had a sufficiently serious injury that was obvious or known to the Defendants, or that they were deliberately indifferent to the same. Summary judgment will, therefore, be granted on the Plaintiff's deliberate indifference claims.

### C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether

that right was clearly established at the time of the alleged violation." <u>E.W. ex rel. T.W. v. Dolgos</u>, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." <u>Smith v. Ray</u>, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that any Defendant violated his constitutional rights, the Defendants are entitled to qualified immunity. As such, summary judgment for the Defendants would also be proper on this ground.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted, and this action is dismissed with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 29] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE.**

The Clerk is respectfully instructed to enter a Clerk's Judgment in favor of the Defendants and to close this case.

**IT IS SO ORDERED.**

Signed: November 24, 2025

Martin Reidinger
Chief United States District Judge

14

Case 1:24-cv-00233-MR   Document 37   Filed 11/24/25   Page 14 of 14